UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRACY EHMANN,

          Plaintiff,

        v.                         Case No. 19-C-1128

OSHKOSH CORPORATION,

          Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S
## MOTION FOR PARTIAL DISMISSAL

Plaintiff Tracy Ehmann filed this action alleging that Defendant Oshkosh Corporation terminated her employment in retaliation for protected activity under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203 *et seq.*, and that Defendant failed to accommodate her disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.* Presently before the court is Defendant's motion to dismiss Plaintiff's FLSA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief can be granted. For the reasons stated below, Defendant's motion to dismiss will be denied.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint must contain factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, she must plead "more than labels and conclusions." *Id.* A simple, "formulaic

recitation of the elements of a cause of action will not do." *Id.* In deciding a motion to dismiss, the court must accept the plaintiff's well pleaded factual allegations as true and view those allegations and any inferences reasonably drawn from them in the light most favorable to the plaintiff. *Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

## ALLEGATIONS CONTAINED IN THE AMENDED COMPLAINT

Plaintiff was employed by Defendant as a designer from about March 2013 until her discharge on April 20, 2018. Plaintiff's husband, Eric Ehmann, was a production worker for Pierce Manufacturing Inc., a wholly owned subsidiary division of Defendant. Mr. Ehmann commenced a class and collective action on February 29, 2016, alleging violations of the wage and overtime provisions of the FLSA. Mr. Ehmann's lawsuit led to the payment of millions of dollars in damages to a class of Pierce production workers. Pierce then terminated Mr. Ehmann's employment in about March of 2017, and in response, Mr. Ehmann filed another lawsuit, this time alleging Pierce violated the anti-retaliation provisions of the FLSA. This second suit concluded with a confidential settlement, and on February 26, 2018, all other disputes between Mr. Ehmann and Pierce were resolved.

On the same day Mr. Ehmann and Pierce resolved the second lawsuit, Defendant provided a "FINAL WARNING" letter to Plaintiff that informed her of specific conditions regarding her employment. In particular, Plaintiff was required to arrive at work no later than 8:30 a.m., she could no longer work past 6:00 p.m., and she was not allowed to work remotely. Prior to receiving the "FINAL WARNING" letter, Plaintiff alleges that she worked "around the clock, and/or traveled, and/or worked on weekends, and/or worked during hours well outside of a 9-to-5 workday." Am. Compl. ¶ 37, Dkt. No. 4. She alleges that she customarily started her shift after

8:30 a.m. "at least 90% of the time" and worked past 6:00 p.m. "at least 90%" of the time. *Id.* ¶¶ 71, 73.

Plaintiff has suffered from Crohn's disease for approximately 30 years and claims she has "debilitating mental illness in the form of stress and anxiety, attributed primarily to her job." *Id.* ¶¶ 41–44. Throughout her employment, Plaintiff's doctor recommended that Plaintiff's daily work schedule be flexible to accommodate her Crohn's disease. Plaintiff alleges that Defendant was aware of her disability and her doctor's recommendations, excused her Crohn's-related absences, and, before issuing the Final Warning letter, had allowed Plaintiff and the other members of her department a flexible work schedule and the option to work remotely. She claims that the flexible schedule and her ability to work remotely allowed her to modify her schedule to manage her disability.

Before receiving the Final Warning letter, Plaintiff alleges she had not received any other warnings or disciplinary action of any kind. *Id.* ¶ 60. Defendant stated that its health benefits administrator directed it to issue the Final Warning letter as a result of the administrator's finding that the 135 hours Plaintiff was absent from work in 2017 were not medically necessary. *Id.* ¶ 61. Plaintiff alleges that she followed the new restrictions contained in the Final Warning letter and contacted Defendant inquiring why she was the only member of her department to be subjected to the new restrictions. She claims she received no substantive response to her inquiries.

On April 20, 2018, Plaintiff was notified that she was discharged from her employment, effective immediately. *Id.* ¶ 77. Defendant asserted three reasons for discharging Plaintiff: she worked outside of "core business hours" in violation of the terms of the Final Warning letter; she had "unauthorized" company property on her cell phone in violation of a confidentiality agreement; and she said "negative" things about her colleagues. *Id.* ¶ 78. Plaintiff denies that she engaged in this conduct. She alleges that after her discharge, she received a call from the

3

administrative assistant of one of Defendant's vice presidents who told Plaintiff that her husband's lawsuits were a motivating factor in her discharge. Plaintiff then filed this action claiming that Defendant violated both the FLSA and the ADA when it terminated her employment.

## ANALYSIS

Plaintiff claims Defendant terminated her employment in retaliation for engaging in protected activity under the FLSA. The FLSA makes it unlawful "for any person . . . to discharge or in any other manner discriminate against any employee because *such employee* has filed any complaint" or otherwise engaged in protected activity under the FLSA. 29 U.S.C. § 215(a)(3) (emphasis added). To state a typical retaliation claim under the FLSA, a plaintiff must allege that she engaged in activity protected by the FLSA, her employer took an adverse employment action against her, and a causal link exists between the two. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018). Defendant claims Plaintiff's FLSA claim must be dismissed because the amended complaint does not contain any allegations suggesting that Plaintiff herself engaged in protected activity. Defendant argues that no court has held that a plaintiff may proceed on an FLSA retaliation claim based on protected activity by a third party who was never employed by the defendant employer. The Seventh Circuit has not addressed the issue of whether a plaintiff may proceed on an FLSA retaliation claim based on protected activity by a third party who was never employed by the defendant employer.

In *Thompson v. North American Stainless, LP*, however, the Supreme Court held that allegations that an employer retaliated against an employee asserting a claim for sex discrimination by firing her fiancé was sufficient to state a claim by the fiancé under Title VII's antiretaliation provision. 562 U.S. 170 (2011). In the words of the Court, "We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired." *Id.* at 174. This is even more true where, as here, the reprisal taken

4

is directed at the employee's spouse. And while *Thompson* dealt with the antiretaliation provision of Title VII, there is no reason why the antiretaliation provision of the FLSA should be construed differently.

Defendant also notes that Plaintiff's spouse, Mr. Ehmann, was employed by its subsidiary, not Defendant. It argues that the FLSA antiretaliation provision requires protected activity by an employee of the defendant. Because there is no basis for ignoring the separate corporate status of Pierce and Oshkosh, Defendant contends it cannot be liable for retaliation against Plaintiff for protected activity her husband undertook at Pierce.

The language of the statute is not as narrow as Defendant's argument assumes. It makes it unlawful for "any person . . . to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). "Person" is broadly defined to include "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). Defendant falls within this definition. The amended complaint alleges that Mr. Ehmann engaged in protected activity under the FLSA and that Defendant retaliated by firing his wife.

Moreover, in *Thompson* the Court rejected the argument that only the employee who engaged in protected activity may sue for retaliation. Instead, the Court adopted a "zone of interests" test to determine whether an individual had standing to sue for retaliation under Title VII. 562 U.S. at 177–78. Applying that test to the facts alleged there, the Court concluded:

> Thompson falls within the zone of interests protected by Title VII. Thompson was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' unlawful actions. Moreover, accepting the facts as alleged, Thompson is not an accidental victim of the retaliation—collateral damage, so to speak, of the employer's unlawful act. To the contrary, injuring him was the employer's intended means of harming Regalado. Hurting him was the unlawful act by which the employer punished her. In those circumstances, we think

Thompson well within the zone of interests sought to be protected by Title VII. He is a person aggrieved with standing to sue.

*Id.* at 178.

Though Defendant may dispute them, Plaintiff makes similar allegations here. She alleges that after the termination of her employment, she was told in a telephone conversation with the administrative assistant to one of Defendant's vice-presidents that "Mr. Ehmann's lawsuits were a motivating factor in Ms. Ehmann's discharge." Am. Compl. ¶ 82. This is sufficient to state a claim for retaliation under the FLSA.

## CONCLUSION

For these reasons, Defendant's motion to dismiss (Dkt. No. 10) is **DENIED**. The Clerk is directed to place the matter on the court's calendar for a Rule 16 telephone scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 20th day of November, 2019.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court - WIED